# EXHIBIT 1

# SBA

SOP 50 10 5(K)

# Lender and Development Company Loan Programs

Office of Financial Assistance

U.S. Small Business Administration



**SMALL BUSINESS ADMINISTRATION**
**STANDARD OPERATING PROCEDURE**

| SUBJECT: | S.O.P. | | REV |
|---|---|---|---|
| | **SECTION** 50 | **NO.** 10 | 5(K) |

Lender and Development Company Loan Programs — Section 50, No. 10, Rev 5(K)

# INTRODUCTION

1. Purpose:  Update SOP 50 10 5(K) Lender and Development Company Loan Programs.
2. Personnel Concerned:  All SBA Employees
3. SOP Canceled:  None. Previous edition of SOP 50 10 will continue to have applicability to loans that were approved during their effective time periods.
4. Updated Information: This full update of SOP 50 10 5 is necessary for the SOP to conform to recently revised regulations in 13 CFR Part 120, and to provide guidance that clarifies and streamlines policy and procedures affecting the 7(a) and 504 programs. This version, which will be SOP 50 10 5(K), includes revised guidance in the following general areas:

   a) Incorporates regulatory changes published in the May 7, 2018, Final Rule on Debt Refinancing in 504 Loan Program (83 FR 19915), effective June 6, 2018;

   b) Incorporates the availability of 504 Debentures with a maturity of 25 years, in accordance with the Federal Register Notice published April 4, 2018, available for 504 Projects approved on or after April 2, 2018;

   c) Incorporates policy changes published in SBA Policy Notice 5000-17057, effective April 3, 2018, including:

   i.   Revised guidance on credit elsewhere for 7(a) and 504 loans;

   ii.  Clarified the minimum equity requirements for 7(a) loans involving change of ownership transactions between existing owners;

   iii. Provided additional guidance regarding the eligibility of marijuana-related businesses and hemp-related businesses; and

   iv.  Reduced the minimum monitoring requirements for Working Capital CAPLines; and

   d) Clarifies guidance for SBA Lenders (7(a) lenders and CDCs) on the delivery of 7(a) loans (including SBA Express, Export Express, Export Working Capital Program and International Trade) and 504 program loans.

5. Originator:  Office of Capital Access

| AUTHORIZED BY: | | EFFECTIVE DATE |
|---|---|---|
| William M. Manger Associate Administrator Capital Access | | April 1, 2019 |
| | | Page 1 |

Federal Recycling Program   Printed on Recycled Paper

# TABLE OF CONTENTS

SUBPART A SBA LENDER AND CERTIFIED DEVELOPMENT COMPANY PARTICIPATION REQUIREMENTS .................................................................7

    PURPOSE OF THIS SUBPART .................................................................. 7

    **CHAPTER 1: 7(a) LENDERS** ................................................................ 8

        I.    THE 7(A) LOAN PROGRAM ................................................ 8

        II.    BECOMING A 7(A) LENDER ............................................... 8

        III.    HOW SBA OVERSEES 7(A) LENDERS .............................. 17

        IV.    DELEGATED AUTHORITY IN THE 7(A) LOAN PROGRAM ............................ 22

    CHAPTER 2: SMALL BUSINESS LENDING COMPANIES .................................................. 40

        I.    SMALL BUSINESS LENDING COMPANIES ("SBLC") 13 CFR §§ 120.460-120.490 ........................................................................ 40

        II.    PROCESS FOR ACQUIRING AN SBLC ................................ 41

    CHAPTER 3: CERTIFIED DEVELOPMENT COMPANIES ................................................. 45

        I.    THE 504 LOAN PROGRAM .................................................. 45

        II.    BECOMING A CDC AND OPERATIONAL REQUIREMENTS ............................... 45

        III.    THE PROCESS OF APPLYING TO BECOME A CDC ......................... 60

        IV.    SBA OVERSIGHT OF CDCs ................................................. 63

        V.    TYPES OF CDCS.................................................................. 70

        VI.    AREA OF OPERATIONS...................................................... 81

SUBPART B  SECTION 7(A) BUSINESS LOAN PROGRAMS ................................................. 88

    PURPOSE OF THIS SUBPART .................................................. 88

    CHAPTER 1: GENERAL DESCRIPTION OF THE 7(A) LOAN PROGRAMS ..................... 89

        I.    LOAN PROCESSING DELIVERY METHODS................................. 89

        II.    USE OF 7(A) LOAN PROCEEDS ............................................ 89

        III.    SPECIAL PURPOSE LOANS ................................................ 89

        IV.    DEFINITIONS APPLICABLE TO THE 7(A) LOAN PROGRAMS....................... 90

    CHAPTER 2: ELIGIBILITY FOR 7(**A**) GUARANTY LOAN PROGRAM ........................... 91

        I.    INTRODUCTION ................................................................. 91

        II.    ELIGIBILITY REQUIREMENTS FOR ALL 7(A) LOAN APPLICANTS.................... 91

        III.    INELIGIBLE TYPES OF BUSINESSES ............................................. 104

IV.     ADDITIONAL ELIGIBILITY REQUIREMENTS FOR CERTAIN SBA 7(A) LOAN DELIVERY METHODS .................................................... 126

V.   ELIGIBLE USES OF LOAN PROCEEDS (13 CFR §§ 120.120, 120.202, and 120.332) .................................................................................................... 128

CHAPTER 3: LOAN TERMS AND CONDITIONS .................................. 146

I.   MAXIMUM LOAN AMOUNTS ...................................................... 146

II.   MAXIMUM GUARANTY AMOUNTS ............................................ 146

III.   LOAN MATURITIES (13 CFR § 120.212) .................................... 148

IV.   INTEREST RATES .......................................................................... 152

V.   SBA GUARANTY FEES (13 CFR § 120.220) ............................... 159

VI.   FEES LENDERS AND/OR THIRD PARTIES MAY COLLECT FROM AN APPLICANT (13 CFR § 120.221): ............................................... 165

VII.   PROHIBITED FEES. ....................................................................... 169

VIII.   DISCLOSURE OF FEES AND LENDER EXPENSES (13 CFR Part 103 and 13 CFR §120.221). ......................................................................... 169

IX.   AGENTS. .......................................................................................... 171

X.   WHO MAY CONDUCT BUSINESS WITH SBA (13 CFR § 103.2) ......................... 173

CHAPTER 4: CREDIT STANDARDS, COLLATERAL AND ENVIRONMENTAL POLICIES .................................................................................................... 177

I.   CREDITWORTHINESS/CREDIT UNDERWRITING ................. 177

II.   GUARANTIES AND COLLATERAL .............................................. 191

III.   ASSIGNMENT OF LEASE AND LANDLORD'S WAIVER ........... 200

IV.   REAL ESTATE APPRAISAL AND BUSINESS VALUATION REQUIREMENTS .......................................................................... 201

V.   ENVIRONMENTAL POLICIES AND PROCEDURES.................. 205

CHAPTER 5: LOAN AUTHORIZATION .................................................. 214

I.   BASIC LOAN CONDITIONS (13 CFR § 120.160): ...................... 214

II.   CONSTRUCTION LOAN PROVISIONS (13 CFR § 120.174) ...... 215

III.   INSURANCE REQUIREMENTS ................................................... 217

IV.   IRS TAX TRANSCRIPT/VERIFICATION OF FINANCIAL INFORMATION .... 217

V.   SPECIAL PROVISION FOR CAPLINES ...................................... 220

VI.   SPECIAL PROVISION FOR FRANCHISE .................................. 220

VII.   MODIFYING THE AUTHORIZATION ....................................... 220

CHAPTER 6: SUBMISSION OF APPLICATION FOR GUARANTY ................................. 221

   I.   CONTENTS OF LENDER'S APPLICATION FOR GUARANTY: ........................... 221

   II.   WHERE TO SUBMIT APPLICATION FOR GUARANTY ....................................... 226

CHAPTER 7: POST-APPROVAL MODIFICATIONS, LOAN CLOSING & DISBURSEMENT ....................................................................................................... 228

   I.   POST-APPROVAL/PRE-DISBURSEMENT REQUESTS FOR CHANGES ............ 228

   II.   TRANSFER OF GUARANTY BETWEEN PARTICIPATING LENDERS ............... 231

   III.   PAYMENT OF GUARANTY FEE ........................................................................ 231

   IV.   LOAN CLOSING AND DISBURSEMENT ........................................................... 231

CHAPTER 8: POST-DISBURSEMENT CHANGES, SECONDARY MARKET, SECURITIZATION AND LENDER REPORTING (SBA FORM 1502) .............................. 255

   I.   POST-DISBURSEMENT CHANGES ................................................................... 255

   II.   SECONDARY MARKET FOR SBA-GUARANTEED LOANS ............................... 255

   III.   SECONDARY MARKET RESOURCES: ............................................................. 256

   IV.   LOAN TRANSFERS: ......................................................................................... 256

   V.   LOAN PARTICIPATION SALES ........................................................................ 257

   VI.   SECURITIZATION AND OTHER CONVEYANCES ........................................... 258

   VII.   LENDER LOAN REPORTING ........................................................................... 260

SUBPART C SECTION 504 CERTIFIED DEVELOPMENT COMPANY LOAN PROGRAM 262

PURPOSE OF THIS SUBPART ....................................................................................... 262

CHAPTER 1: GENERAL PROVISIONS ......................................................................... 263

   I.   PURPOSE OF THE 504 CERTIFIED DEVELOPMENT COMPANY LOAN PROGRAM ......................................................................................................... 263

   II.   CREDIT STANDARDS (13 CFR § 120.150) ....................................................... 263

   III.   DEFINITIONS .................................................................................................... 263

   IV.   HOW A 504 PROJECT IS FINANCED ............................................................... 265

CHAPTER 2: ELIGIBILITY ........................................................................................... 274

   I.   INTRODUCTION .............................................................................................. 274

   II.   ELIGIBILITY REQUIREMENTS FOR ALL 504 APPLICANTS ........................... 274

   III.   TYPES OF INELIGIBLE BUSINESSES .............................................................. 287

   IV.   504 PROGRAM-SPECIFIC ELIGIBILITY FACTORS .......................................... 309

CHAPTER 3: COLLATERAL, APPRAISALS AND ENVIRONMENTAL POLICIES ........ 324

I.    COLLATERAL ............................................................................................. 324

II.   APPRAISAL REQUIREMENTS ................................................................... 327

III.   ENVIRONMENTAL POLICIES AND PROCEDURES.......................... 328

CHAPTER 4: LOAN APPLICATION PROCEDURES AND CONTROLS ........................... 337

I.    CDC'S 504 APPLICATION.......................................................................... 337

II.   MINIMUM DEBENTURE AMOUNT ......................................................... 337

III.   SUBMITTING THE APPLICATION ....................................................... 337

CHAPTER 5: LOAN CONDITIONS/AUTHORIZATION REQUIREMENTS..................... 340

I.    AUTHORIZATION BOILERPLATE/WIZARD........................................ 340

II.   MODIFYING THE AUTHORIZATION ..................................................... 347

CHAPTER 6: CLOSINGS.................................................................................................... 349

I.    RESPONSIBILITY FOR CLOSING THE 504 LOAN AND DEBENTURE............. 349

II.   THE CLOSING PACKAGE .......................................................................... 349

III.   SPECIFIC RESPONSIBILITIES AND PROCEDURES FOR CLOSING AND POST-CLOSING ACTIVITIES ............................................................................... 350

CHAPTER 7: DEBENTURE PRICING & FUNDING ........................................................ 355

I.    PRICING A 504 DEBENTURE (13 CFR § 120.931) ................................. 355

II.   FUNDING THE DEBENTURE .................................................................... 358

CHAPTER 8: ALLOWABLE FEES .................................................................................... 360

I.    ALLOWABLE FEES THAT A 504 BORROWER MAY BE CHARGED ................ 360

II.   FEES FOR OTHER SERVICES .................................................................. 361

III.   DISCLOSURE OF FEES AND CDC EXPENSES (13 CFR Part 103)..................... 362

IV.   AGENTS........................................................................................................ 363

V.    WHO MAY CONDUCT BUSINESS WITH SBA (13 CFR §103.2)......................... 364

CHAPTER 9: BORROWER'S DEPOSIT, DEBENTURE POOLS AND  POST-DISBURSEMENT ISSUES .................................................................................. 366

I.    RULES GOVERNING THE BORROWER'S DEPOSIT ........................... 366

II.   DEBENTURE POOLS ................................................................................... 366

III.   MISCELLANEOUS ..................................................................................... 366

IV.   POST-DISBURSEMENT ISSUES .............................................................. 366

APPENDIX 1: RESTRICTIONS ON FOREIGN CONTROLLED ENTERPRISES.................... 368

APPENDIX 2: DEFINITIONS.............................................................................................. 371

SOP 50 10 5(K)

APPENDIX 3: RELIANCE LETTER ........................................................................................378
APPENDIX 4: NAICS CODES OF ENVIRONMENTALLY SENSITIVE INDUSTRIES.........381
APPENDIX 5: REQUIREMENTS PERTAINING TO GAS STATION LOANS........................384
APPENDIX 6: SBA ENVIRONMENTAL INDEMNIFICATION AGREEMENT.....................386
APPENDIX 7: SAMPLE BORROWING BASE CERTIFICATE & REPORT TO LENDER.....408
APPENDIX 8: REQUIREMENTS FOR ELECTRONIC SIGNATURES IN THE 7(A) AND 504
LOAN PROGRAMS ...............................................................................................................416

Applicant does not have credit available elsewhere:

    a. The maintenance or improvement of the Lender's rating or performance evaluation under the Community Reinvestment Act (CRA) or its implementing regulations; or

    b. The improvement of the Lender's collateral lien position.

## III. INELIGIBLE TYPES OF BUSINESSES

A. The Lender must determine whether the Applicant is one of the types of businesses listed as ineligible in SBA regulations (13 CFR § 120.110). Certain business types appearing on this list may be eligible under limited circumstances, as discussed below.

1. Businesses organized as a non-profit are ineligible (for-profit subsidiaries may be eligible). (13 CFR § 120.110 (a))

2. Businesses Engaged in Lending (13 CFR § 120.110 (b)).

    a. SBA cannot guarantee a loan that provides funds to businesses primarily engaged in lending, investments, or to an otherwise eligible business engaged in financing or factoring. This prohibits SBA loans to:

        i. Banks;

        ii. Life Insurance Companies (but not independent agents);

        iii. Finance Companies;

        iv. Factoring companies;

        v. Investment Companies;

        vi. Bail Bond Companies; and

        vii. Other businesses whose stock in trade is money.

    b. The limited circumstances under which certain businesses engaged in lending may be eligible are as follows:

        i. A pawn shop that provides financing is eligible if more than 50% of its revenue for the previous year was from the sale of merchandise rather than from interest on loans.

        ii. A business that provides financing in the regular course of its business (such as a business that finances credit sales) is eligible, provided less than 50% of its revenue is from financing its sales.

        iii. A mortgage servicing company that disburses loans and sells them within 14 calendar days of loan closing is eligible. Mortgage companies primarily engaged in the business of servicing loans are eligible. Mortgage companies that make loans and hold them in their portfolio are not eligible.

        iv. A check cashing business is eligible if it receives more than 50% of its revenue from the service of cashing checks.

        v. A business engaged in providing the services of a financial advisor on a fee basis is eligible provided they do not use loan proceeds to invest in their own

portfolio of investments.

3. Passive Businesses (13 CFR § 120.110(c)):

   a. Passive businesses owned by developers and landlords that do not actively use or occupy the assets acquired or improved with the loan proceeds (except as Eligible Passive Companies under 13 CFR § 120.111) are not eligible.

   b. Businesses primarily engaged in subdividing real property into lots and developing it for resale on its own account are not eligible.

   c. Businesses that are primarily engaged in owning or purchasing real estate and leasing it for any purpose are not eligible. For example, shopping centers, salon suites, and similar business models that generate income by renting space to accommodate independent businesses that provide services directly to the public are not eligible.

   d. Businesses that lease land for the installation of a cell phone tower, solar panels, billboards, or wind turbine also are not eligible. However, the business operating the cell phone tower, solar panel, billboard, or wind turbine is eligible.

   e. Businesses that have entered into a management agreement with a third party that gives the management company sole discretion to manage the operations of the business, including control over the employees, the finances and the bank accounts of the business, with no involvement by the owner(s) of the Applicant business, are not eligible. (See paragraph II.D.7 of this chapter for additional guidance on management agreements.)

   f. Apartment buildings and mobile home parks are not eligible.

   g. Residential facilities that do not provide healthcare and/or medical services are not eligible.

   h. The limited circumstances under which certain businesses engaged in renting or leasing may be eligible are as follows:

      i. Hotels, motels, recreational vehicle parks, marinas, campgrounds, or similar types of businesses are eligible if more than 50% of the business's revenue for the prior year is derived from transients who stay for 30 days or less at a time and the business complies with all zoning and other legal requirements. If the Applicant is a start-up, the Applicant's projections must show that more than 50% of the business's revenue will be derived from transients who stay for 30 days or less at a time.

      ii. Businesses that are licensed as nursing homes or assisted living facilities and provide healthcare and/or medical services are eligible.

      iii. Businesses that are engaged in leasing equipment, household goods or other items are eligible. (See subparagraph A.2 above regarding the eligibility of businesses engaged in lending.)

      iv. Businesses such as barber shops, hair salons, nail salons, and similar types of personal services businesses are eligible, regardless of whether they have

employees or contract with individuals to provide the services. (See subparagraphs a) and c) above regarding ineligibility of developers and landlords.)

   i.   An ineligible passive business cannot obtain an SBA loan for any purpose, including the purchase or construction of a building for its own use.

4. Life Insurance Companies (13 CFR § 120.110(d)):

   a.   Life insurance companies are not eligible.

   b.   A life insurance agent may qualify as an eligible independent contractor if the business meets all of the following factors:

      i.   The insurance agent is not subject to the control or direction of another agent in conjunction with the sale and servicing of life insurance;

      ii.   The insurance agent has full discretion over the means and method for rendering services;

      iii.   The insurance agent hires, supervises and pays employees needed to perform his or her services;

      iv.   The insurance agent performs services at his or her own place of business rather than at the life insurance company's place of business;

      v.   The insurance agent is paid by the job or on a commission basis, rather than by the hour, week or month;

      vi.   The insurance agent is responsible for paying his or her own business expenses;

      vii.   The insurance agent provides a significant amount of his or her own personal resources and other equipment, even if the insurance company provides some forms, manuals, or other materials;

      viii.   The insurance agent invests in facilities that are used in performing services and are not typically maintained by employees (such as the maintenance of an office rented at fair market value from an unrelated party); and

      ix.   The insurance agent can realize a profit or incur a loss as a result of his or her services.

5. Business Located in a Foreign Country or Owned by Undocumented (Illegal) Aliens (13 CFR § 120.110 (e))

   a.   Businesses are not eligible for SBA assistance if the business is:

      i.   Located in a foreign country with no activities in the United States; or

      ii.   Owned in whole or in part by undocumented (illegal) aliens.

   b.   Businesses owned by non-U.S. citizens may be eligible. See paragraph III.C of this Chapter for details.

6. Businesses Selling Through a Pyramid Plan (13 CFR § 120.110(f))

Pyramid or multilevel sales distribution plans are not eligible for SBA assistance.

7. Businesses Engaged in Legal Gambling Activities (13 CFR § 120.110(g))

   a. Small businesses that obtain more than one-third of their annual gross revenue for the prior year, including rental income, from legal gambling activities are not eligible.

   b. If the purpose of the business is gambling, such as a pari-mutuel betting racetrack or a gambling casino, the business is not eligible, regardless of the percentage of gross revenue derived from gambling.

   c. Circumstances exist in which businesses engaged in legal gambling activities may be eligible, including if the Applicant obtains one-third or less of their annual gross revenue, including rental income, from:

      i. Commissions from official State lottery ticket sales under a State license; or

      ii. Gambling activities licensed and supervised by a state authority in those states where the activities are legal.

8. Businesses Engaged in any Illegal Activity (13 CFR § 120.110 (h))

   a. SBA must not approve loans to Applicants that are engaged in illegal activity under federal, state, or local law. This includes Applicants that make, sell, service, or distribute products or services used in connection with illegal activity, unless such use can be shown to be completely outside of the Applicant's intended market.

   b. Marijuana-Related Businesses:

      i. Because federal law prohibits the distribution and sale of marijuana, financial transactions involving a marijuana-related business would generally involve funds derived from illegal activity. Therefore, businesses that derive revenue from marijuana-related activities or that support the end-use of marijuana may be ineligible for SBA financial assistance.

      ii. Whether a business is eligible is determined by the nature of the business's specific operations. The following businesses are ineligible:

         a) "Direct Marijuana Business" -- a business that grows, produces, processes, distributes, or sells marijuana or marijuana products, edibles, or derivatives, regardless of the amount of such activity. This applies to recreational use and medical use even if the business is legal under local or state law where the applicant business is or will be located.

         b) "Indirect Marijuana Business" -- a business that derived any of its gross revenue for the previous year (or, if a start-up, projects to derive any of its gross revenue for the next year) from sales to Direct Marijuana Businesses of products or services that could reasonably be determined to aid in the use, growth, enhancement or other development of marijuana. Examples of Indirect Marijuana Businesses include businesses that provide testing services, or sell or install grow lights, hydroponic or other

specialized equipment, to one or more Direct Marijuana Businesses; and businesses that advise or counsel Direct Marijuana Businesses on the specific legal, financial/accounting, policy, regulatory or other issues associated with establishing, promoting, or operating a Direct Marijuana Business.  However, for purposes of illustration, SBA does not consider a plumber who fixes a sink for a Direct Marijuana Business or a tech support company that repairs a laptop for such a business to be aiding in the use, growth, enhancement or other development of marijuana.

Indirect Marijuana Businesses also include businesses that sell smoking devices, pipes, bongs, inhalants, or other products if the products are primarily intended or designed for marijuana use or if the business markets the products for such use.

iii.   Consistent with the Agriculture Improvement Act of 2018 (Public Law No. 115-334), a business that grows, produces, processes, distributes or sells products made from hemp (as defined in section 297A of the Agricultural Marketing Act of 1946) is eligible.

9.   Businesses Which Restrict Patronage (13 CFR § 120.110(i) and 13 CFR § 113.3(a))

a.   Businesses that restrict patronage for any reason other than capacity are not eligible. For example, a men's or women's only health club is not eligible, whether the business is a franchise or not.

b.   Circumstances exist in which certain businesses, like fitness centers that market to one gender, may be eligible if they permit both men and women to join and/or use the facility. Lenders must document the file with the following:

i.   Affidavit signed by the Applicant that the business is open to both men and women; and

ii.   Evidence that the facility is open to both men and women, such as appropriate bath/locker rooms, or documented membership demographics.

10. Government-Owned Entities, Excluding Native American Tribes (13 CFR § 120.110(j))

a.   Businesses owned by municipalities and other political subdivisions are not eligible.

b.   Special Requirements Applicable to Native American Businesses:

i.   A Native American tribe is a Governmental entity and is not eligible.

ii.   A small business which is owned in whole or in part by either a State or federally-recognized Native American Tribe may be eligible, provided the small business meets all other criteria set forth in SBA Loan Program Requirements and:

a)   Establishes that it is a separate legal entity from the tribe and submits the documents authorizing its existence; and

b)   For federally recognized tribes, the tribe waives sovereign immunity with respect to the collateral pledged for the loan, and collection of the loan

from the Applicant, OR agrees to a "sue and be sued" clause specifically naming U.S. Federal courts as "courts of competent jurisdiction."

   c)  Tribes that are recognized only by a state do not have sovereign immunity. Therefore, the requirement identified in paragraph ii.b) above is not applicable.

c.  Lenders may seek the advice and assistance of the Bureau of Indian Affairs (BIA) personnel when dealing with loans collateralized by Indian lands held in trust.

11.  Businesses Engaged in Promoting Religion (13 CFR § 120.110 (k))

a.  If it appears an Applicant may be connected, associated or affiliated with a religious organization, or may have a religious component, the Lender must complete the Religious Eligibility Worksheet (SBA Form 1971). Any questions regarding this worksheet may be addressed to local SBA Counsel.

b.  Prior to submitting an application to the LGPC (non-delegated) or requesting a loan number (delegated), the Lender must submit the completed worksheet and supporting documentation to the Associate General Counsel for Litigation at Form1971Review@sba.gov for a final Agency decision on eligibility. Such supporting documentation includes, but is not necessarily limited to, Lender's Credit Memorandum; the Applicant's business plan; any mission statement of the Applicant; and, where applicable, a detailed statement of Applicant's curriculum. SBA may request additional documentation as needed to complete the eligibility review. Upon approval by SBA, Lender may proceed to submit the application to the LGPC (non-delegated) or process the loan under its delegated authority. For non-delegated applications, the Lender must submit a copy of SBA's approval to the LGPC with the application. The delegated Lender must retain the worksheet, supporting documentation, and evidence of SBA's approval in its loan file and must submit all of the foregoing to SBA with any request for guaranty purchase. SBA also may review the worksheet and supporting documentation when conducting Lender oversight activities.

c.  An Applicant is not ineligible merely because it offers religious books, music, ceremonial items and other religious articles for sale.

12.  Businesses Engaged in SBA Loan Packaging (13 CFR § 120.110(m))

An Applicant that receives more than one third of its gross annual revenue from packaging SBA loans, including as a Lender Service Provider, is not eligible.

13.  Businesses with an Associate of Poor Character (13 CFR § 120.110(n))

The Agency requires that every proprietor, general partner, officer, director, managing member of a limited liability company (LLC), owner of 20% or more of the equity of the Applicant, Trustor (if the Applicant is owned by a trust), and any person hired by the Applicant to manage day-to-day operations ("Subject Individual") must be of good character.

A Subject Individual may not reduce his/her ownership in an Applicant business within 6 months prior to the date of the application for the purpose of avoiding compliance with this

section. The only exception to the 6-month rule is when a Subject Individual completely divests his/her interest prior to the date of application. Complete divestiture includes divestiture of all ownership interest and severance of any relationship with the Applicant (and any associated Eligible Passive Company) in any capacity, including being an employee (paid, unpaid, or contracted).

The Agency cannot provide financial assistance to businesses with Associates who are:

    a. Incarcerated, on probation, or on parole, (an individual with a deferred prosecution, conditional discharge, order of protection, or who is on a sex offender registry is treated as if the individual is on probation or parole); or

    b. Currently subject to an indictment, criminal information, arraignment, or other means by which formal criminal charges are brought in any jurisdiction.

The character evaluation process to determine eligibility under this section begins with Subject Individuals answering the applicable questions on SBA Form 1919, "Borrower Information Form" or the EIB-SBA Joint Form 84-1 for Export Working Capital Loans.

*(NOTE:  A Subject Individual must respond "Yes" even when the individual believes the record is sealed, expunged or otherwise unavailable. Lenders must keep this information private and confidential. There are no exceptions or waivers to this policy.)*

    a. If all Subject Individuals respond "No" to Questions 17, 18, and 19 on SBA Form 1919 or Questions C.2.e.1, 2, or 3 on the EIB-SBA Joint Form 84-1, the SBA 7(a) loan application may be processed and the SBA Form 912, "Statement of Personal History" is not required.

    b. If any Subject Individual responds "Yes" to Question 17 on SBA Form 1919 or indicates in response to Question C.2.e.1 on the EIB-SBA Joint Form 84-1 that the Subject Individual is currently under indictment, etc., the Applicant is not eligible for an SBA 7(a) loan.

    c. If any Subject Individual is currently on parole or probation (including probation before judgment), the Applicant is not eligible for an SBA 7(a) loan.

    d. If any Subject Individual responds "Yes" to Questions 18 or 19 on SBA Form 1919 or Question C.2.e.2 or C.2.e.3 on the EIB-SBA Joint Form 84-1, a character determination for the Subject Individual is required to establish eligibility under this section as follows:

        i. SBA Form 912 Package:

        The Subject Individual must provide the Lender with a complete SBA Form 912 Package, which must include:

          a) A completed SBA Form 912, signed and dated within 90 days of submission to SBA; and

          b) A detailed written statement, which is separately signed and dated by the Subject Individual, describing the events and circumstances of any "Yes" response, which must include the following:

    i)  Date(s) of each offense;

    ii)  City or county and State where the offense(s) occurred;

    iii) The specific charge(s) and final conviction(s) (e.g. DUI, assault, forgery, etc.) and the level of each charge and conviction (either a misdemeanor or felony); and

    iv) Disposition of the charge(s) and conviction(s), including all sentencing, conditions, or requirements of the court. This includes conditions, such as registration on the Sex Offenders Registry, which provides for incarceration upon failure to comply with the conditions.

c)  Court documentation evidencing that any sentencing or other conditions of the court have been met. If sentencing and other conditions of the court have not been satisfied, then the Applicant is not eligible.

    i)  Court documentation may include but is not limited to:

        (a)  Evidence of the status (paid/unpaid) of fines or restitution imposed;

        (b)  Evidence of attendance or completion of any class or workshop required by the court;

        (c)  Jail time served; or

        (d)  If applicable, the terms of probation including evidence and dates of successful conclusion of the probation.

    ii)  If court documentation is not available, the Subject Individual must submit:

        (a)  A written statement from the applicable court indicating documents are not available; and

        (b)  Verification that there are no outstanding warrants, unpaid fines, or other conditions of the court that have not been satisfied.

ii.   Character Determination by the Lender:

The Lender may process the application without review of the SBA Form 912 Package by SBA if the Lender determines upon review of the court's disposition that the case(s) resulted in:

a)  One or multiple misdemeanor convictions whose conditions were met more than 6 months prior to receipt of the application, and the convictions did not involve a crime against a minor (for example, child abuse or endangerment, possession of child pornography, etc.);

b)  Reduction of the original felony charge(s) to misdemeanor(s); or

c)  Dismissal of the charges.

The Lender must retain the supporting information and court documentation, including the original complete SBA Form 912 Package in the file for the life of the loan.

iii.   Circumstances Requiring an FBI Fingerprint Background Check and a Character Determination by SBA:

The Lender must submit to SBA a copy of the complete SBA Form 912 Package for a background investigation by SBA and the Subject Individual must complete an FBI Fingerprint Background Check in accordance with the following paragraph if the Lender determines upon review of the court's disposition that the case(s) resulted in:

a) Felony conviction(s);

b) Misdemeanor conviction(s) within 6 months of the date of the loan Application;

c) Charge(s) filed and final disposition against the Subject Individual has been completed within 6 months of the date of the loan Application; and/or

d) Misdemeanor conviction(s) for crime(s) against a minor (for example, child abuse or endangerment, possession of child pornography, etc.).

**The Lender may not disburse the loan until it has received written clearance from SBA.**

iv.   FBI Fingerprint Background Check:

SBA will conduct FBI fingerprint background checks via submission of the Form FD-258 (fingerprint card) or electronic fingerprint submission (if available) to the FBI. "Electronic fingerprint submission" means fingerprints taken and reproduced in a machine-readable format by a fingerprint capture system that complies with the FBI's Electronic Biometric Transmission Specifications. An electronic fingerprint submission must be compatible with the FBI's Automated Fingerprint Identifications System, or any successor system in place for biometric identification. The electronic fingerprint submission will generally be in paper format as produced by the fingerprint capture system, which an individual may attach to SBA Form 912 to expedite character check procedures. When using electronic fingerprint submission, check local requirements, as some localities require individuals to bring one or more Forms FD-258 to facilitate the electronic submission. Where an electronic fingerprint submission is not locally available, Form FD-258 may be used. Local law enforcement agencies will usually assist the individual with the fingerprinting. Lenders may obtain the Form FD-258 from the local SBA Field Office or order the cards from the FBI's website at: https://www.fbi.gov/services/cjis/fingerprints-and-other-biometrics/ordering-fingerprint-cards-and-training-aids.

v.   Lender Submission to SBA:

Lenders submit completed SBA Form 912 Packages to SBA via overnight mail or courier to: 409 3rd Street, SW., Washington, DC 20416. SBA Form 912 Packages with electronic fingerprint submissions may be submitted via email to: oca912@sba.gov.

The Lender's submission to SBA must include a coversheet with the Lender's contact information (Lender name, point of contact, title, phone number, email, and mailing address). (NOTE: If any form is incomplete or illegible, the SBA Form 912 Package will be screened out and returned to the Lender.)

vi.   Character Determination by SBA:

The Director, Office of Financial Assistance (D/FA), or designee, will make the character determination as follows:

a)  Based on the information received from the FBI fingerprint check, OCA will determine either that the Subject Individual has good character, or is not eligible for SBA financial assistance; and

b)  OCA will advise the Lender in writing of the Agency's character determination.

vii.   File Retention:  Lenders must retain a copy of the Agency's character determination in their loan file for the life of the loan.

e.   If the Subject Individual was cleared by the D/FA or designee on a previous application submitted within 6 months of the date of the current application and the Subject Individual certifies that no other offenses have occurred since the previous application was cleared by the D/FA or designee, non-delegated Lenders may submit a copy of the prior clearance and the Subject Individual's certification with the application. A Delegated Lender processing a loan under its delegated authority must retain this documentation in the loan file and may proceed to process the application.

f.   912 Decision Appeals:  A Subject Individual may request a reconsideration of an adverse character determination within 6 months of the date of SBA's decision.

i.   Any request for reconsideration must include additional information or documentation supporting the request to reconsider the adverse character determination. Factors that contribute to a favorable reconsideration include:

a)  Additional information provided by the Subject Individual that satisfactorily explains the circumstances of the prior offense(s);

b)  The passage of time between the date of the disclosed offense(s) and the date of the application, during which the Subject Individual has not committed additional offenses and has generally led a responsible life and made a contribution to the community; and/or

c)  Any additional law enforcement and/or court documentation that supports the request.

ii.   The request for reconsideration should be submitted through the Lender to SBA, either via email to: oca912@sba.gov, or via overnight mail to: U.S.

Small Business Administration, Office of Capital Access, Attn: 912 Processing, 409 3rd Street SW, 8th Floor, Washington, DC 20416.

iii.   The Lender's submission to SBA must include a coversheet with the Lender's contact information (Lender name, point of contact, title, phone number, email, and mailing address).

14. Equity Interest by Lender or Associates in Applicant Concern (13 CFR § 120.110(o))

a.   A Lender or any of its Associates, may not obtain an equity interest, either directly or indirectly, in the Applicant.

b.   The only exception is when the Associate of the Applicant is a Small Business Investment Company (SBIC), in which case the requirements of 13 CFR § 120.104 apply. See also 13 CFR § 120.140 for a list of ethical requirements that apply to Lenders.

15. Businesses Providing Prurient Sexual Material (13 CFR § 120.110 (p))

a.   A business is not eligible for SBA assistance if:

i.   It presents live or recorded performances of a prurient sexual nature; or

ii.   It derives more than 5% of its gross revenue, directly or indirectly, through the sale of products, services or the presentation of any depictions or displays of a prurient sexual nature.

b.   SBA has determined that financing lawful activities of a prurient sexual nature is not in the public interest. The Lender must consider whether the nature and extent of the sexual component causes the business activity to be prurient.

c.   If a Lender finds that the Applicant may have a business aspect of a prurient sexual nature, prior to submitting an application to the LGPC (non-delegated) or requesting a loan number (delegated), the Lender must document and submit the analysis and supporting documentation to the Associate General Counsel for Litigation at PSMReview@sba.gov for a final Agency decision on eligibility. Upon approval by SBA, the Lender may submit the application to the LGPC or may proceed to process the loan under its delegated authority. A non-delegated Lender must submit a copy of SBA's approval with the application to the LGPC. A delegated Lender must retain its analysis, supporting documentation, and evidence of SBA's approval in its loan file and must submit the analysis and supporting documentation to SBA with any request for guaranty purchase. SBA also may review such documentation when conducting Lender oversight activities.

16. Prior Loss to the Government (13 CFR § 120.110 (q)) and Delinquent Federal Debt (31 CFR § 285.13)

a.   Unless waived by SBA for good cause, SBA cannot provide assistance to an Applicant if there has been a Prior Loss to the Government. "Prior Loss" means the dollar amount of any deficiency on a Federal loan or federally assisted financing which has been incurred and recognized by a Federal agency after it has concluded its write-off and/or close-out procedures for the particular account including the

following:

   i. Loss on the sale or other disposition of collateral acquired after default;

   ii. Compromise, i.e., resolution or settlement of a loan's principal balance for less than the full amount due;

   iii. Bankruptcy by a Borrower and/or any guarantors; and

   iv. Any unreimbursed advance payments by a Federal agency.

b. Unless waived by SBA for good cause, SBA cannot provide assistance to an Applicant if there is a Delinquent Federal Debt attributed to the Applicant:

   i. A debt is considered "delinquent" when any Federal loan or federally assisted financing has not been paid within 90 days of the payment due date. A debt is considered "delinquent" even if the creditor agency has suspended or terminated collection activity with respect to such debt.

   ii. A debt is not considered "delinquent" if:

     a) The creditor agency has released the obligor from paying the debt;

     b) The obligor is subject to, or has been discharged from the debt in a bankruptcy proceeding;

     c) The obligor has entered into a satisfactory written repayment agreement and is current; or

     d) The debt is in an administrative or judicial appeal process.

   (Note:  If there was a loss associated with any of these debts, however, the loan remains subject to the rules governing a Prior Loss to the Government under subparagraph 16.a. above.)

   iii. "Federal loan or federally-assisted financing" includes any loan made directly or guaranteed/insured by any Federal agency, any unreimbursed advance payments under 8(a) or similar programs operated by any Federal agency, and federally-backed student loans. It does not include unpaid/delinquent taxes, any loss incurred by the Federal Deposit Insurance Corporation (FDIC) when it sells a loan at a discount, or any loan purchased, held or securitized by Fannie Mae or Freddie Mac. For the purposes of Delinquent Federal Debt, "Federal loan or federally-assisted financing" does not include disaster loans, but for the purposes of Prior Loss, it includes disaster loans.

c. These rules apply to:

   i. The Applicant that incurred the Delinquent Federal Debt or caused the Prior Loss (either directly or as a guarantor);

   ii. Any business owned, operated or controlled by the Applicant or an Associate of the Applicant that incurred the Delinquent Federal Debt or caused the Prior Loss (either directly or as a guarantor); and

   iii. For Delinquent Federal Debt only, any individual or entity who will be

        guaranteeing the loan for the Applicant.

    d. Delegated Lenders are responsible for accessing their records in E-Tran to determine if any of the individuals or businesses identified in subparagraph c. above experienced a Prior Loss.

    e. Delegated Lenders are responsible for checking the Credit Alert Verification Reporting System (CAIVRS) to determine if any of the individuals or businesses identified in paragraph c) above have outstanding Delinquent Federal Debt or Prior Loss.

        i. CAIVRS allows the Lender to enter multiple tax id numbers (either SSN or EIN) to search for an outstanding Delinquent Federal Debt in connection with a loan application.

        ii. Lenders may access CAIVRS at https://entp.hud.gov/caivrs/public/home.html.

    f. Waiver Requests:

        i. When there are compelling circumstances, the Lender may send a written request for a waiver to the LGPC. The Lender must identify the Delinquent Federal Debt or Prior Loss to the Government, explain the relationship of the Applicant to the individual or business causing the delinquency or prior loss and the circumstances justifying the waiver.

        ii. For Delinquent Federal Debt, the SBA Chief Financial Officer (CFO) (who may only delegate this authority to the Deputy Chief Financial Officer) will make the final decision on the request.

        iii. For Prior Loss to the Government, the D/FA or designee will make the final decision on the request.

    g. If the Delinquent Federal Debt or Prior Loss to the Government is fully satisfied, the application can be processed without a waiver from the CFO or D/FA, including under a Lender's delegated authority. The Lender must document its file as to how the debt or loss has been fully satisfied.

    h. All Lenders must inform the Applicant that if the small business defaults on the SBA-guaranteed loan and SBA suffers a loss, the names of the small business and the guarantors of the SBA-guaranteed loan will be referred for listing in the CAIVRS database, which may affect their eligibility for further financial assistance from SBA or other Federal agencies or departments.

17. Businesses primarily engaged in political or lobbying activities (13 CFR § 120.110 (r))

    An Applicant that derives over 50% of its gross annual revenue from political or lobbying activities is not eligible.

18. Speculation (13 CFR § 120.110 (s))

    a. Speculative businesses are not eligible. This prohibits loans to an Applicant for:

        i. The sole purpose of purchasing and holding an item until the market price increases; or

ii.   Engaging in a risky business for the chance of an unusually large profit.

b.   Speculative businesses include:

i.   Wildcatting in oil;

ii.   Dealing in stocks, bonds, commodity futures, and other financial instruments;

iii.   Mining gold or silver in other than established fields;

iv.   Research and Development; and

v.   Building homes for future sale (except under the Builders CAPLines program).

*Note: Construction of homes for future sale with no sales contract in place (spec homes) is eligible under the Builders CAPLines program. (13 CFR § 120.391)*

c.   Non-speculative businesses which may be eligible include:

i.   A business, such as a grain elevator, that uses a commodity contract to lock in a price;

ii.   A farmer who uses a commodity contract to lock in the sale price of his or her harvest;

iii.   A business engaged in drilling for oil in established fields; and

iv.   A business engaged in building a home under contract with an identified purchaser.

B.   Small Business Lending Company (SBLC).

An SBLC may not make a loan to an Applicant that has received financing (or a commitment for financing) from a Small Business Investment Company (SBIC) that is an Associate of the SBLC. (13 CFR § 120.476)

C.   Businesses Owned by Non-U.S. Citizens.

SBA can provide financial assistance to businesses that are at least 51% owned and controlled by persons who are not citizens of the U.S., provided the persons are lawfully in the U.S. and have an appropriate work visa. The processing procedures and the terms and conditions will vary, depending upon the status of the owners as assigned by the United States Citizenship and Immigration Services (USCIS).

SBA requires all participating Lenders, including SBLCs, to comply with the U.S. Department of the Treasury regulations for Customer Identification Programs for banks, savings associations, credit unions, and certain non-federally regulated banks found at 31 CFR § 1020.220.

1.   Businesses owned by Naturalized Citizens are eligible and the naturalized citizens are not subject to any special restrictions or requirements. If an individual's SBA Form 1919 (or EIB-SBA Joint Form 84-1 for EWCP loans) reflects he or she is a U.S. Citizen no further verification of status is required.

2.   Businesses owned by Lawful Permanent Residents (LPRs) are eligible. LPRs are persons who may live and work in the U.S. for life unless their status is revoked through an

administrative hearing.

a. The USCIS Form I-551 (551), Lawful Permanent Resident Card, commonly referred to as the "green card," is evidence of LPR status. USCIS has two versions of the 551:

i. Resident Alien Card (issued through 1997); and

ii. Permanent Resident Card. (This is the most recent version and has been issued since 1997.)

iii. Because it can take up to a year for a newly arrived immigrant to receive a 551, new immigrants are issued an immigrant visa with a Customs and Border Protection (CBP) stamp evidencing their lawful permanent residence. This visa with CBP stamp serves as evidence of LPR status, so long as the visa is not expired.

b. Since 1997, USCIS has issued the 551 with a 10-year validity, at which time it expires and must be renewed. A 551 issued between 1979 and August 1989, however, does not have an expiration date.

Replacing the 551 may be necessary if the 551 is lost, the individual changes his/her name, etc. Replacement of the 551 may take more than a year. The expiration of the immigrant's 551 does not affect the LPR status of the immigrant. Acceptable forms of evidence when the 551 has been submitted to USCIS for replacement or renewal upon expiration include the following:

i. Temporary I-551 stamps. A temporary stamp, issued by USCIS to replace lost or expiring 551s, either on the immigrant's unexpired foreign passport (that reads "Upon endorsement, serves as temporary I-551 evidencing permanent residency for 1 year"), or in cases where there is no passport or it is expired, on Form I-94 with passport photo (that reads "Processed for I-551 – Temporary Evidence of Lawful Permanent Residence");

ii. USCIS Form I-327, "Re-entry Permit," issued to LPRs in lieu of a visa, which is valid for only 2 years (the I-327 is issued for LPRs who need to be overseas for longer than 1 year); or

iii. USCIS Form I-797, Notice of Action. Aliens with Conditional LPR status (those who married a U.S. citizen and were married for less than a year at the time of being granted LPR status) must file Form I-751 to remove conditional status within 90 days of their 551 expiration. LPRs awaiting approval of their I-751 should be issued Form I-797, which along with the expired 551, is proof of current LPR status. Please note that there are numerous types of Form I-797 (e.g., I-797A, I-797-B, I-797C, etc.). For purposes of removing conditional status, only I-797 is acceptable.

c. SBA requires the 551 or an acceptable substitute be current at the time it is submitted with an application or it will be returned and not processed. PLP, PLP-EWCP, Export Express, SBA Express and Pilot Loan Program Lenders must have a copy of the current 551 or acceptable substitute prior to requesting a loan number.

3. Businesses owned by non-immigrant aliens residing in the U.S. may be eligible, subject to specific restrictions. Applicant businesses owned by such individuals must also meet the requirements of paragraph III.C.8 below.

Non-immigrant (documented) aliens are persons who are admitted to the U.S. for a specific purpose(s) and for a temporary period of time with a current/valid USCIS document, such as a non-immigrant visa. (An immigrant visa is issued to persons wishing to live permanently in the U.S.) While any non-immigrant alien may generally own a U.S. business as a passive investor, to control the business or be employed by it, the non-immigrant alien must have an appropriate work visa. To be eligible, the non-immigrant alien must have current/valid USCIS documentation permitting them to reside and work in the U.S. legally.

Lender must verify the documentation/status of each alien with USCIS.

Eligible non-immigrant categories. The following classes of non-immigrant aliens may be eligible for SBA financial assistance (USCIS Entrepreneur Guide non-immigrant visa categories):

   a. B-1 Business Visitor;

   b. F-1/OPT Optional Practical Training;

   c. H-1B Specialty Occupation;

   d. O-1A Extraordinary Ability and Achievement;

   e. E-2 Treaty Investor; or

   f. L-1 Intracompany Transferee.

If the Applicant has a different class of non-immigrant visa that the Lender believes may be eligible, please contact the Office of Financial Assistance for further guidance.

Lenders must consider the period of stay afforded by a non-immigrant visa category (along with possible extensions) relative to the loan term.

4. Asylees and refugees (persons who receive temporary refuge in the United States) with LPR status.

Asylees and refugees are authorized to work because of their immigration status. Acceptable forms of evidence for asylees and refugees include the following:

   a. Unexpired EAD (Employment Authorization Document, Form I-766);

   b. Form I-94/Form I-94A indicating asylee or refugee status; and

   c. Expired EAD with Form I-797C Notice of Action from USCIS for Form I-765 (if Form I-797C lists the same employment authorization category as the expired EAD).

5. Businesses owned by aliens who are subject to the Immigration Reform and Control Act of 1986 (IRCA) may be eligible under limited circumstances.

   a. IRCA vests USCIS with the authority to grant illegal aliens lawful temporary resident status. IRCA prohibits Federal financial assistance to businesses owned 20% or more by such individuals for a period of 5 years after USCIS grants lawful temporary resident status.

b. This disqualification does not apply to Cuban or Haitian entrants or alien entrants subject to IRCA who are blind or disabled. The definition of blind or disabled is equivalent to SBA's criteria for determining eligibility for assistance to any small business owned by disabled individuals.

c. All Applicants self-certify that they are eligible under IRCA by signing SBA Form 1919, which includes the "Statements Required by Law and Executive Orders." This includes a certification that IRCA does not apply to them or if it does apply, more than 5 years have elapsed since they were granted lawful temporary resident status pursuant to the 1986 legislation.

6. Documentation to evidence and verify an alien's status.

a. At time of application, for any individual required to complete SBA Form 1919 (or EIB-SBA Joint Form 84-1 for EWCP loans), who is not a U.S. citizen but is located in the U.S., the following applies:

i. The individual must provide his or her alien registration number on SBA Form 1919, "Borrower Information Form" (for EWCP loans, the individual must provide his or her alien registration number on EIB-SBA Joint Form 84-1). An "alien" (whether immigrant-alien or non-immigrant alien) is someone who resides in the U.S. but is not a U.S. citizen. If the individual is not residing or working in the U.S., then he or she is not considered an "alien" and does not have an immigration status or alien registration number that must be verified. If the individual does not have an alien registration number, he or she may provide an I-94 card/document which has a departure record number issued on the card.

ii. Lenders must obtain a copy of the individual's USCIS documentation and maintain all documentation in the case file.

iii. Lender must request Document Verification from the Sacramento Loan Processing Center (SLPC).

a) In order to request Document Verification from SLPC, all Lenders must register designated personnel with the SLPC at Sacramento504Register@sba.gov.

b) The SLPC will respond to such requests by providing instructions on how to complete registration and to use the electronic verification process.

c) The Lender submits a USCIS Form G-845 (845), "Document Verification Request," with supporting information to the SLPC. The Lender must state on the 845 that the request is for an SBA-guaranteed loan.

d) As required by USCIS, SBA will release information about the status of an alien to Lenders or other non-governmental entities ONLY when a signed and dated authorization from the alien is attached to and submitted with the 845 on that alien providing name, address and date of birth.

e) As required by USCIS, SBA accepts either of the following authorization statements:

       i)   "I authorize the U.S. Citizenship and Immigration Services to release information regarding my immigration status to [name of Lender], because I am applying for a U.S. Small Business Administration loan."

       ii)   "I authorize the U.S. Citizenship and Immigration Services to release alien verification information about me to [name of Lender], because I am applying for a U.S. Small Business Administration loan."

   iv.   As required by USCIS, all verification requests must include an authorization with the original signature of the alien for SBA to release information to Lenders on the status of verification. The original Document Verification Request (Form G-845) and authorization for release must be maintained by the Lender in the Applicant's file for review by SBA and USCIS, if requested.

   v.   The information provided to SBA by the USCIS system is intended solely for the purpose of determining eligibility for SBA financial assistance. This information is governed by the Privacy Act, 5 U.S.C. 552(a)(i)(1), and any person who obtains this information under false pretenses or uses it for any purpose other than for determining eligibility may be subject to criminal penalties.

   vi.   The authorization statement must not be on SBA or Lender stationery.

  b.  Lenders must receive verification of the status of each alien required to submit USCIS documents prior to submission of the application to SBA or, for delegated processing, prior to submission of the request for loan number. The Lender must document the findings in the loan file.

  c.  Verification of the status of an LPR is required if 6 months has elapsed since the last verification with one exception: if the individual reported an offense on SBA Form 912, then verification would be required even if 6 months had not elapsed, as the offense may put their status at risk. For non-LPRs, verification is required with each loan application, as their status can be revoked at any time.

7.  Businesses owned by Foreign Nationals or Foreign Entities may be eligible.

   Businesses listed in Appendix 1 of this SOP, "Restrictions on Foreign Controlled Enterprises," that are owned and managed by Foreign Nationals, Foreign Entities or Non-Immigrant Aliens are not eligible. If a business is not listed in Appendix 1, it may be eligible.

8.  Additional requirements for eligibility of businesses owned by non-citizens other than LPRs, including foreign-owned businesses:

  a.  The application must contain assurance that management is expected to continue in place indefinitely and have U.S. citizenship or verified LPR status.

   i.   Management must have operated the business for at least 1 year prior to the application date. (This requirement prevents financial assistance to "start-up" businesses owned by aliens who do not have LPR status.)

   ii.   Lender must require the personal guaranty from management.

    b. The Applicant must pledge collateral within the jurisdiction of the U.S. with a liquidation value equal to no less than the approved loan amount at the time of first disbursement and, to the extent that the value of collateral declines during the life of the loan, the Lender must require the Borrower to pledge additional collateral to ensure a sufficient collateral coverage amount. If the Applicant owned by foreign nationals, foreign entities or non-immigrant aliens residing in the U.S. does not have sufficient collateral, the Applicant is not eligible for an SBA-guaranteed loan.

    c. In order for a business not to be subject to these additional requirements, it must be at least 51% owned by individuals who are U.S. citizens and/or who have LPR Status from USCIS and control the management and daily operations of the business. This can only be waived by the D/FA or designee.

D. Eligible Passive Company ("EPC") Rule (13 CFR § 120.111).

The Eligible Passive Company (EPC) Rule is an exception to SBA regulations that prohibit financing assets which are held for their passive income. (13 CFR § 120.130(d)) **Because the EPC rule is an exception, the EPC and the OC must comply with all of the conditions in 13 CFR § 120.111 and each condition is interpreted strictly. If all conditions are not complied with, in the event of default, SBA may deny liability on the guaranty.**

An Eligible Passive Company (EPC) must use loan proceeds only to acquire or lease, and/or improve or renovate, real or personal property (including eligible refinancing), that it leases to one or more Operating Companies (OCs) for conducting the Operating Company's business, or to finance a change of ownership between the existing owners of the EPC. With the exception of a change of ownership between existing owners of the EPC, an EPC may not use loan proceeds to acquire a business, acquire stock in a business or any intangible assets of a business, or to refinance debt that was incurred for those purposes. Further, an EPC may only use loan proceeds to finance a change of ownership between existing owners when the real estate has been held by the selling owner(s) for at least 36 months.

An EPC can take any legal form or ownership structure (e.g., corporation, partnership, LLC, sole proprietor, etc.)

A tenancy in common is a form of legal ownership and does not create a new or separate legal entity. If authorized by state law, legal entities can be a tenant in common with individuals.

1. There may be several individuals or entities in a tenancy in common, but the tenancy in common is considered one (1) EPC.

2. The loan documents must be signed by all of the members of the tenancy in common, with authorized individuals signing for the entity members.

Multiple OCs can be separately owned, however, multiple EPCs in one transaction are not permitted.

1. Conditions that apply to all EPCs:

a.  The OC must be an eligible small business;

b.  The proposed use of proceeds must be an eligible use as if the OC were obtaining the financing directly;

c.  The EPC (with the exception of a trust) and the OC each must be small under the appropriate size standard of 13 CFR Part 121 (see paragraph 3 below);

d.  The EPC must lease the project property directly to the OC;

    i.   The lease must be in writing;

    ii.  The lease must be subordinate to the SBA's mortgage, trust deed lien, or security interest on the property;

    iii. The lease must have a term, including options to renew exercisable solely by the OC, at least equal to the term of the loan;

    iv.  The EPC (as landlord) must furnish as collateral for the loan an assignment of all rents paid under the lease. An assignment of the lease is only required when necessary to perfect the assignment of rents or to enable the Lender to exercise the tenant's rights upon default;

    v.   The rent or lease payments cannot exceed the amount necessary to make the loan payment to the Lender, and an additional amount to cover the EPC's direct expenses of holding the property, such as routine maintenance, insurance and property taxes.

    vi.  The OC must lease 100% of the property from the EPC, but it can sublease a portion of the property under the rules governing occupancy requirements with which all SBA Applicants must comply.

    vii. If, in acquiring the property, the EPC becomes the beneficiary or owner of the rights to an existing mineral lease on the property, the EPC must assign its interest in the lease (together with its rights to all rental, mineral, royalty, bonus, or similar lease payments that might accrue by virtue of the existing mineral (oil and gas) lease) to the OC; and any such assignment must be subordinated to all Deeds of Trust or Mortgages. In addition, the Lender must take the following actions as applicable:

        a)  If subordination is not possible, the Lender must provide documentation to that effect;

        b)  If the mineral lease has been terminated, the Lender should attempt to have it removed from the Title Policy;

        c)  If the Lender is unable to have the mineral lease removed from the Title Policy, the Lender must provide supporting documentation evidencing the proper assignment of the lease to the OC and obtain a title endorsement to protect SBA's interest in the real property (i.e., California Land Title Association (CLTA) 100.23 or 100.24).

    viii. Non-delegated Lenders must submit a copy of the lease agreement between the

EPC and OC in their request for loan guaranty to SBA. Delegated Lenders must keep a copy of the executed lease in their loan file and must submit the lease with any request to SBA to honor the guaranty.

e.   An EPC (excluding a trust) may not engage in any business activity other than leasing the property to the OC.

f.   The OC must be a guarantor or a co-Borrower on the loan. The OC must be a co-Borrower if it receives any loan proceeds as working capital and/or for the purchase of other assets, including intangible assets, for the OC's use.

   i.   Each holder of an ownership interest constituting at least 20% of either the EPC or the OC must guarantee the loan (if the holder is a trust, then the Trustee shall execute the guarantee on behalf of the trust). Each spouse with an ownership interest in the EPC or the OC must personally guarantee the loan in full when the combined ownership interest of both spouses in the EPC or OC is at least 20%. If a person has executed the Note as a Borrower in an individual capacity, that person does not also have to execute a personal guaranty.

   ii.   When deemed necessary for credit or other reasons, SBA or, for a loan processed under a Lender's delegated authority, the Lender, may require other appropriate individuals or entities to provide full or limited guaranties of the loan without regard to the percentage of their ownership interests, if any.

2.   Conditions that apply when the EPC is owned in whole or in part by a trust.

a.   The eligibility status of the Trustor will determine trust eligibility.

b.   All donors to the trust will be deemed to have Trustor status for eligibility purposes.

c.   The Trustee must warrant and certify that the trust will not be revoked or substantially amended for the term of the loan without the prior written consent of SBA.

d.   The Trustor must guarantee the loan.

   i.   If an Employee Stock Ownership Plan trust agreement prohibits it from being a guarantor or co-Borrower, then it cannot use the EPC form of borrowing.

   ii.   Beneficiaries that exercise any control over the actions of the trust also must guarantee the loan.

e.   The Trustee shall certify in writing to SBA that:

   i.   The Trustee has authority to act;

   ii.   The trust has authority to borrow funds, pledge trust assets, and lease the property to the OC;

   iii.   The Trustee has provided accurate, pertinent language from the trust agreement confirming the above; and

   iv.   The Trustee has provided and will continue to provide SBA with a true and complete list of all trustors and donors.

      f.   The trust itself does not have to be small by SBA size standards.

3.  Size Determinations under the EPC rule.

    a.  If the EPC and the OC are affiliated, the two companies are combined for determining size.

      i.   If there is only one OC, use the OC's NAICS code.

      ii.  If there are multiple, unaffiliated OCs, use the NAICS code of the OC that derives the most revenue. Note: Each OC must be small based on its own NAICS code.

      iii.  If the multiple OCs are affiliated, then use the rules detailed in 13 CFR §121.107 for determining the primary industry of affiliated businesses. The NAICS Code of the primary industry of the OC shall be the identifying NAICS Code.

    b.  If the EPC and the OC are not affiliated, each entity must be small under the size requirement for its particular industry.

      The existence of a lease between the EPC and the OC does not, in and of itself, create an affiliation, even if the EPC and OC are co-Borrowers.

4.  When sending data to SBA, use the same NAICS Code that was used to determine size for the Applicant.

5.  Submission of Financial Statements by the EPC and the OC:

    a.  Both the EPC and each OC must submit Financial Statements. The OC's statements are subject to tax verification.

    b.  The regular requirement for an Aging of receivables and payables is waived for EPCs.

E.  Special Requirements For Loans Where Collateral May Be Included In The National Register Of Historic Places (Historic Properties).

Section 106 of the National Historic Preservation Act mandates Federal agencies undergo a review process for all federally funded projects that potentially impact sites listed or eligible to be listed on the National Register of Historic Places ("NRHP"). If a loan will in any way affect such properties, the Lender (on delegated loans) and LGPC (on non-delegated loans) must consult with local SBA counsel for further guidance. Local SBA counsel will then notify the Associate General Counsel for Litigation or designee, and OFA.

If there is no potential to cause effect on historic properties, there are no further obligations under Section 106. For example, if the proceeds of the loan are to be used solely to purchase the property and no renovations or changes are anticipated, the SBA counsel may make the determination that no further Section 106 review is required.

If the local SBA counsel determines that the undertaking is the type of activity that has the potential to cause effects on historic properties, then SBA is required to consult with the relevant State Historic Preservation Officer ("SHPO") to determine if the use of the proceeds of the loan will have an adverse effect on the historic nature of the property in question.

If SBA finds no adverse effect and the SHPO agrees or does not object within 30 days, the Agency can proceed with the approval of the loan. If, however, SBA finds that there will be an adverse effect on the historic nature of the property, SBA must consult with SHPO to attempt to resolve the issue. This consultation will result in Memorandum of Agreement between Agency and SHPO regarding the resolution of the adverse effect.

Once local SBA counsel has made a no adverse effect determination or resolved any adverse effect issues with the SHPO, the decision must be signed off by the Associate General Counsel for Litigation or designee.

## IV. ADDITIONAL ELIGIBILITY REQUIREMENTS FOR CERTAIN SBA 7(A) LOAN DELIVERY METHODS

A. Export Express.

1. Eligibility for Export Express is limited to businesses that meet SBA's standard eligibility requirements discussed above and that have been in operation, although not necessarily in exporting, for at least 12 full months. However, Applicants that have been in operation for less than 12 months are eligible if both of the following conditions are met:

   a. The Applicant's key personnel have clearly demonstrated export expertise and substantial previous successful business experience; and

   b. The Lender processes the Export Express loan using conventional commercial loan underwriting procedures and does not rely solely on credit scoring or credit matrices to approve the loan. Non-bank Lenders that do not have a conventional loan portfolio must submit their underwriting procedures to the Office of Credit Risk Management for written approval prior to making an Export Express loan.

   Evidence of compliance with both of these requirements must be retained by the Lender in its file.

2. Applicants with operations, facilities or offices overseas, other than those strictly associated with the marketing and/or distribution of products/services exported from the U.S., are not eligible for Export Express, although they may be eligible for other SBA 7(a) financial assistance.

3. Lender must maintain in its loan file information provided by the Applicant as it pertains to the use of proceeds for export development activities and its projected impact on the Applicant's export sales along with an estimate of the Applicant's export sales for the 12 month period following the date of the loan application. Required documentation is itemized in Paragraph V.J.4 of this Chapter.

B. International Trade Loans.

The Applicant must demonstrate either 1 or 2, **and** 3 below in order to be eligible:

1. The loan proceeds will expand existing export markets or develop new export markets. To establish this, the Applicant must submit an export business plan, including both a projection and narrative rationale that contains enough information to reasonably support the likelihood of expanded export sales.

## II.  GUARANTIES AND COLLATERAL

A.  Guaranties (13 CFR § 120.160(a)):

Each loan must be guaranteed by at least one individual or entity. If no one individual or entity owns 20% or more of the Applicant business, at least one of the owners must provide a full unconditional guaranty. In addition, if the guaranty will be provided by a trust, the requirements of the paragraph II.A.3 below must be met.

1.  Personal Guaranties:

a.  Individuals who own 20% or more of an Applicant business must provide an unlimited full guaranty. (SBA Form 148 or equivalent Lender's form). If a person has executed the Note as a Borrower in an individual capacity, that person does not also have to execute a personal guaranty.

b.  When ownership interest of an Applicant is held by a corporation, partnership or other form of legal entity, the ownership interests of all individuals must be disclosed.

c.  When deemed necessary for credit or other reasons, SBA or, for a loan processed on a delegated basis, the Lender, may require other appropriate individuals to provide full or limited guaranties of the loan without regard to the percentage of their ownership interests, if any. For example, an individual with a minority ownership or no ownership interest in the Applicant or OC who is critical to the operation of the business may be required to provide a personal guaranty.

d.  If a limited guaranty is used, Lender must choose one of the payment limitation options in SBA Form 148L (Unconditional Limited Guaranty) or equivalent Lender's form and specify the option in the Authorization.

e.  Lender must obtain a personal financial statement from all individuals guaranteeing the loan.

f.  The guaranty may be secured or unsecured. If the loan is not fully collateralized by fixed assets, available equity in personal real estate must be pledged to secure the guaranty, up to the collateral shortfall as defined in section II.B.4.b of in this Chapter below.

2.  Guaranty of Spouse:

a.  Each spouse owning less than 20% of an Applicant must personally guarantee the loan in full when the combined ownership interest of both spouses is 20% or more.

b.  For a non-owner spouse, Lender must require the signature of the spouse on the appropriate collateral documents. The spouse's guaranty secured by jointly held collateral will be limited to the spouse's interest in the collateral.

3.  Corporate/Other Guaranties:

a.  All entities that own 20% or more of an Applicant must provide an unlimited full guaranty. If the entity that owns 20% or more of the Applicant is a trust (revocable or irrevocable), the trust must guarantee the loan with the trustee executing the

guaranty on behalf of the trust and providing the certifications required in Chapter 2, Paragraph III.D.2.c) and e) of this Subpart. In addition, if the trust is revocable, the Trustor also must guarantee the loan.

b.  Financial statements are necessary to determine the assets available to support the guaranty.

c.  When deemed necessary for credit or other reasons, SBA or, for a loan processed on a delegated basis, the Lender, may require other appropriate entities to provide full or limited guaranties of the loan without regard to the percentage of their ownership interests, if any. This may include entities who manage the day-to-day operations of the Applicant or OC through a Management Agreement without an ownership interest in the Applicant or OC.

4.  Reducing Ownership Interest:

a.  Any Person subject to the guaranty requirements 6 months prior to the date of the loan application would continue to be subject to the requirements even if that Person has changed their ownership interest to less than 20%.

b.  The only exception to the 6-month rule is when that Person completely divests their interest prior to the date of application. Complete divestiture includes divestiture of all ownership interest and severance of any relationship with the Applicant (and any associated Eligible Passive Company) in any capacity, including being an employee (paid or unpaid).

5.  Employee Stock Ownership Plans (ESOPs) and 401(k) Accounts:

When an ESOP or 401(k) owns 20% or more of an Applicant, the Plan or Account cannot guarantee the loan. The Plan or Account must meet all applicable IRS, Treasury and Department of Labor requirements. In addition, the following loan conditions must be met:

a.  The owner(s) of a 401(k) must provide his or her full unconditional personal guaranty regardless of the individual ownership interest in the Applicant concern. This guaranty must be a secured guaranty if required by SBA's existing collateral policies.

b.  The members of the ESOP are not required to personally guarantee the debt; however, all owners of the Applicant who hold an ownership interest outside the ESOP are subject to SBA's personal guaranty requirements, including paragraph II.A.1.c) above.

c.  The application cannot be structured as an EPC/OC. ([13 CFR § 120.111(a)(6)](#)) (SBA regulations require each 20% or more owner of the EPC and each 20% or more owner of the OC to guarantee the loan, and the regulation does not provide for an exception.)

B.  General Collateral Requirements:

1.  With respect to collateral, Lenders must use commercially reasonable and prudent practices to identify collateral, which conforms to procedures at least as thorough as those used for their similarly-sized non-SBA guaranteed commercial loans. Decisions regarding what

collateral must be taken to secure a loan are based on the circumstances of the individual loan, including size, and must meet the minimum requirements set forth in this section.

2.  Adequacy of Collateral

    a.  A loan request is not to be declined solely on the basis of inadequate collateral. In fact, one of the primary reasons Lenders use the SBA-guaranteed program is for those Applicants that demonstrate repayment ability but lack adequate collateral to repay the loan in full in the event of default. However, SBA does not permit its guaranty to be a substitute for available collateral.

    b.  When assessing the adequacy of collateral, the Lender must consider the impact that covenants and other restrictions recorded against the collateral may have on its value and marketability. (See Chapter 2, Paragraph II.D.8 of this Subpart for guidance on covenants and other restrictions recorded against the collateral when the Applicant is operating under a franchise agreement.) The Lender must document this analysis in the file. Examples of items to review include:

        i.  Deed restrictions, covenants, easement provisions, reversionary interests, subordinations, leases and options, and other provisions that restrict the use of the property for the benefit of a third party (note: certain deed restrictions pertaining to the use of the property, which are intended to protect the health and safety of occupants, may be acceptable, e.g., deed restrictions based upon environmental concerns including restrictions on residential use, use as a day care center for children or seniors, use as a school, or use as a hospital); and

        ii. Engineering Controls that require the Applicant or subsequent owners to install costly devices or structures such as extraction wells or subsurface barrier walls prior to constructing a building, remodeling, or otherwise improving the property.

3.  Collateral Requirements for 7(a) Small Loans.

    a.  For loans of $25,000 or less, the Lender is not required to take collateral. (personal guaranties must still be obtained in accordance with paragraph A above); and

    b.  For loans over $25,000, up to and including $350,000, the Lender must follow the collateral policies and procedures that it has established and implemented for its similarly-sized non-SBA guaranteed commercial loans, but at a minimum:

        i.  Lender must take a first lien on assets financed with loan proceeds;

        ii. Lender must take a lien on all of the Applicant's fixed assets, including real estate, up to the point that the loan is fully secured, based on the collateral valuations used in paragraph 4.a) below. Lender is not required to take a lien against Applicant's real estate when the equity is less than 25% of the fair market value. The Lender may limit the lien taken against real estate to the amount necessary to ensure the loan is fully secured; and

        iii. Lender may secure Applicant's trading assets if it does so for its similarly-sized non-SBA guaranteed commercial loans. Lender may also take personally-owned investment and/or residential real estate as collateral, and

may limit the liens on that collateral in accordance with the provisions in paragraph 4.b) below.

4. Collateral Requirements for 7(a) loans over $350,000 and 7(a) Small Loans that do not meet the minimum credit score requirements (except SBA Express, Export Express, CAPLine and EWCP):

    a. SBA considers a loan as "fully-secured" if the Lender has taken security interests in all available fixed assets of the Applicant with a combined "net book value" as adjusted below, up to the loan amount. For 7(a) loans, the term "fixed assets" means real estate, including land and structures, machinery and equipment owned by the business or an EPC. "Net book value" is defined as an asset's original price minus depreciation and amortization.

        i. New machinery and equipment (excluding furniture and fixtures) may be valued at 75% of price minus any prior liens for the calculation of "fully-secured";

        ii. Used or existing machinery and equipment (excluding furniture & fixtures) may be valued at 50% of Net Book Value or 80% with an Orderly Liquidation Appraisal minus any prior liens for the calculation of "fully-secured";

        iii. Improved real estate can be valued at 85% and unimproved real estate can be valued at 50% of the market value for the calculation of "fully-secured" and the value must be determined in accordance with the requirements set forth in Paragraph IV (Real Estate Appraisals) below; and

        iv. Furniture and Fixtures may be valued at 10% of Net Book Value or appraised value.

    b. If there is a collateral shortfall (not "fully-secured") on the SBA-guaranteed loan the Lender:

        i. Must take available equity in the personal real estate (residential and investment property) of the principals. Liens on personal real estate may be limited to the amount of the collateral shortfall. In addition, liens on personal real estate may be limited to 150% of the equity in the collateral, if there are tax implications associated with the lien amount in the particular state where the lien is filed.

        ii. May include trading assets as necessary (using 10% of current book value for the calculation).

    c. For loans that are more than $250,000 and collateralized by commercial real estate, Lenders must comply with the real estate appraisal requirements set forth in Paragraph IV below.

    d. SBA does not require a Lender to collateralize a loan with real estate (including commercial, residential and investment properties owned by the Applicant or personally by the owners) to meet the "fully secured" definition when the equity in the real estate is less than 25% of the property's fair market value. The Lender must document in their loan file the source (other than the personal financial statement)

for making the determination of less than 25% equity.

   e.   When loan proceeds from any 7(a) loan will be used to purchase or improve assets, a first security interest in those assets must be obtained.

   f.   Assets owned by an owner of the Applicant and Spouse:

      i.   When an individual alone or together with his or her spouse owns 20% or more of the Applicant, the Lender must consider taking as collateral a lien on personal real estate (including commercial and investment properties not occupied by the Applicant business) that is owned individually by the Applicant owner, or jointly owned by the individual and his or her spouse.

      ii.   Real estate transferred by the Applicant to the non-owning spouse within 6 months of the date of the application will not be exempt from consideration as available collateral.

5.   When loan proceeds from any 7(a) loan will be used to refinance existing debt, the loan must be secured with at least the same collateral and lien priority as the debt that is being refinanced. When the debt being refinanced is considered as being over collateralized based upon SBA collateral requirements and the SBA loan will remain fully secured, the Lender may approve the release of excess collateral. Substitute collateral may be offered providing it is of comparable value and useful life and is determined to be acceptable by SBA or Lender under their delegated authority.

C.   CAPLine Collateral Requirements:

The CAPLine programs listed below have specific collateral requirements as follows:

1.   For Working Capital CAPLines:

   a.   If the Lender will disburse the line based on a BBC, the Lender must obtain a first lien on the Applicant's working/trading assets (i.e., accounts receivable, inventory).

   b.   If the Lender will not use a BBC to disburse the line, the Lender must assume full utilization of the revolving line of credit and secure the line with sufficient collateral to ensure there is a 1:1 collateral ratio. Lender must obtain a first lien position on the working/trading assets (accounts receivable and inventory) financed with the line. If the working/trading assets are insufficient to provide a 1:1 collateral ratio, the Lender also must take additional collateral to ensure there is a 1:1 collateral ratio. If business assets do not fully secure the loan, the Lender must take available equity in personal real estate owned by the principals as collateral to ensure there is a 1:1 collateral ratio. (See Chapter 7 of this Subpart for further guidance.)

2.   For Builders CAPLines:

   a.   SBA will accept no less than a second lien position on the property being constructed or renovated if the purpose of the first lien was to acquire the property.

   b.   If the property is part of a subdivision where the prime Lender for the subdivision holds a first lien OR serves as partial collateral for a loan secured by more than one parcel of real estate, the first lienholder must provide a "release clause" for transfer of clear title to any eventual buyer of individual parcels upon receipt of a pre-

established payment.

    c.   Lenders must not take a second lien position if the first lienholder requires that the entire loan be paid in full before any property is released. Where Lender/SBA is in a second position, the total amount necessary to release the first and second liens may not exceed 80% of the fair market value (selling price) of the completed project.

3. For Contract CAPLines:

    a.   Applicants must be able to provide the Lender with a first lien position on the contract(s) and the proceeds of the contract(s) financed with the line, by assignment to the participating Lender and proper UCC filing. See Chapter 7 of this Subpart for guidance on exceptions to when an assignment is required.

    b.   The Lender may take additional collateral in accordance with its policies and procedures governing its similarly-sized, non-SBA guaranteed commercial lines of credit.

    c.   All liens must be perfected and the lien position verified prior to the initial disbursement of the line. For seasonal, contract or builder lines that revolve for more than one season, contract or construction/renovation project, liens must be perfected prior to the initial disbursement for each season, contract or project.

    d.   The requirements for personal guaranties are the same as for any other 7(a) program.

D. SBA Express and Export Express Collateral Requirements:

Lenders must use commercially reasonable and prudent practices to identify collateral items.

1. For loans of $25,000 or less, Lenders are not required to take collateral.

2. For loans over $25,000, the Lender must, to the maximum extent practicable, follow the written collateral policies and procedures that it has established and implemented for its similarly-sized, non-SBA guaranteed commercial loans, except for Export Express lines of credit over $25,000 used to support the issuance of a standby letter of credit. The line of credit must have collateral (cash, cash equivalent or project) that will provide coverage for at least 25% of the issued standby letter of credit amount.

E. EWCP Collateral Requirements:

1. EWCP loans must be secured by no less than a first security interest in all collateral associated with the transactions financed. This includes at least the export inventory and receivables, assignment of credit insurance, letters of credit proceeds, and contract proceeds as applicable. Collateral must be located in the United States, its territories or possessions. An assignment of contract proceeds for an EWCP Asset Based Line of Credit may be required at the discretion of the LGPC for non-delegated loans, or the PLP-EWCP Lender for EWCP loans processed under delegated authority.

In general, the export-related inventory produced and the foreign accounts receivables generated by the export sales financed will be considered to provide adequate collateral coverage. SBA, for non-delegated loans, or the PLP-EWCP Lender, may require additional collateral by requiring a lien on other business assets.

2. Standby Letters of Credit: SBA requires additional collateral if EWCP loan proceeds are used to support the issuance of a standby letter of credit. In such situations, the Applicant must deposit cash into an account held by the Lender in an amount equal to 25% of the standby letter of credit being issued. This deposit must remain in the account held by the Lender for the term of the standby letter of credit. SBA, for non-delegated loans, or the PLP-EWCP Lender may allow export inventory and/or foreign accounts receivable or other acceptable collateral to replace the cash deposit requirement. However, if using an asset-based loan (ABL) facility, the Lender must determine that the borrowing base for the ABL will support at least 25% of the total of all standby letters of credit supported by the loan. In addition, EWCP Authorization Boilerplate contains specific provisions related to standby letters of credit. All Lenders must document the justification in their file.

3. Receivables generated from sales to foreign purchasers are not considered a foreign asset and may be taken as collateral.

4. Personal guaranties of all 20% or more owners is generally required, but may be waived by the Director, International Trade Finance (D/ITF).

F. International Trade (IT) Loan Collateral Requirements:

1. The Lender is required to take a first lien on the assets financed with IT loan proceeds or other assets of the Applicant. An IT loan can be secured by a second lien position on the property or equipment financed by the IT loan or on other assets of the Applicant, if the SBA determines that the second lien provides adequate assurance of repayment of the loan.

   For example, when the IT loan is to improve business real estate (such as financing an addition to an existing building) or to purchase equipment, and the collateral securing the IT loan is subject to a first lien securing an existing loan used to acquire the business real estate or equipment, the IT loan may be in a second lien position if:

   a. The loan in the first lien position was not made at or about the same time as the IT loan ("piggyback financing"), and

   b. The Lender's analysis identifies how the risk of a second lien position on the IT loan is offset by other factors, such as other collateral has been taken to secure the IT loan that in liquidation would pay the IT loan in full or the business has been operating profitably and repaying its existing obligations in a timely manner and the Borrower's cash flow is sufficient to repay all of the Borrower's debt, including the IT loan.

   c. Clear justification must exist when the interest rate for the first lien loan is significantly higher than the IT loan and/or the maturity of the first lien loan is significantly shorter than the IT loan. (See discussion in Subpart A, Chapter 1, Paragraph II.E.2.b) vi of this SOP regarding "piggyback financing," which is not eligible.)

2. IT loans may not be processed under a Lender's PLP authority when the IT loan will not have a first lien on the assets being financed.

G. Collateral Insurance: (13 CFR § 120.160(c))

1. Hazard Insurance – SBA requires hazard insurance on all assets pledged as collateral. The

Applicant must also maintain a separate policy if the business is located in a state that requires additional coverage such as wind, hail, earthquake, etc.

2. Real Estate:

   a. Coverage must be in the amount of the full replacement cost.

   b. If full replacement cost insurance is not available, coverage must be for the maximum insurable value.

   c. Insurance coverage must contain a MORTGAGEE CLAUSE (or substantial equivalent) in favor of the Lender. This clause must provide that any action or failure to act by the mortgagor or owner of the insured property will not invalidate the interest of Lender. The policy or endorsements must provide for at least 10 days prior written notice to Lender of policy cancellation.

3. Personal Property

   a. Coverage must be in the amount of full replacement cost.

   b. If full replacement cost insurance is not available, coverage must be for maximum insurable value.

   c. Insurance coverage must contain a LENDER'S LOSS PAYABLE CLAUSE (or substantial equivalent) in favor of Lender. This clause must provide that any action or failure to act by the debtor or owner of the insured property will not invalidate the interest of Lender. The policy or endorsements must provide for at least 10 days prior written notice to Lender of policy cancellation.

4. SBA Express and Export Express: If the Lender does not require hazard insurance (for example, if it would impose an undue burden on an Applicant given the small size of a loan), the Lender must document the reason in its loan file.

5. Marine Insurance:

   a. Coverage in the amount of the full insurable value on the vessel(s) with Lender designated as "Mortgagee" must be obtained when the vessel is the collateral on the loan.

   b. The policy must contain a Mortgagee clause providing that the interest of Lender will not be invalidated by any:

      i. Act, omission, or negligence of the mortgagor, owner, master, agent or crew of the insured vessel;

      ii. Failure to comply with any warranty or condition out of mortgagee's control; or

      iii. Change in title, ownership or management of the vessel.

   c. The policy must include Protection and Indemnity, Breach of Warranty, and Pollution coverage.

   d. The policy or endorsements must provide for at least 10 days prior written notice to Lender of policy cancellation.

6. Flood Insurance:

    a. SBA flood insurance requirements are based on the Standard Flood Hazard Determination (FEMA Form 086-0-32). The mandatory purchase of flood insurance, as set forth by the requirements of the National Flood Insurance Program (NFIP), applies with equal force to condominium and cooperative units. Policies for such units will consist of separate policies obtained by the individual unit owner for the particular unit and the condominium or cooperative association for the exterior of the entire building.

    b. If any portion of a building that is collateral for the loan is located in a special flood hazard area, Lender must require Applicant to obtain flood insurance for the building under the NFIP.

    c. If any equipment, fixtures or inventory that is collateral for the loan ("Personal Property Collateral") is in a building any portion of which is located in a special flood hazard area and that building is collateral for the loan, Lender must require Applicant to also obtain flood insurance for the Personal Property Collateral under the NFIP.

    d. If any Personal Property Collateral is in a building any portion of which is located in a special flood hazard area and that building is not collateral for the loan, Lender must require Applicant to obtain available flood insurance for the Personal Property Collateral. The Lender may waive this requirement when the building is not collateral for the loan if it:

        i. Uses prudent lending standards to determine that flood insurance is not economically feasible or not available; and

        ii. Includes a written justification in the loan file that fully explains why flood insurance is not economically feasible or, if flood insurance is not available, the steps taken to determine that it is not available.

    e. Insurance coverage must be at least equal to the outstanding principal balance of the loan or the maximum limit of coverage made available under the National Flood Insurance Act of 1968, as amended (42 U.S.C. 4001 et seq.), whichever is less. ("Maximum limit of coverage available" is the lesser of the maximum limit available under the NFIP for the type of structure or the insurable value of the structure.)

    f. Insurance coverage must contain a MORTGAGEE CLAUSE/LENDER'S LOSS PAYABLE CLAUSE (or substantial equivalent) in favor of Lender. This clause must provide that any action or failure to act by the debtor or owner of the insured property will not invalidate the interest of Lender. The policy or endorsements must provide for at least 10 days prior written notice to Lender of policy cancellation.

7. Life Insurance:

    a. For loans processed under standard 7(a) over $350,000 or 7(a) Small Loans that do not meet the minimum acceptable credit score, Lenders may follow their internal policy for similarly sized non-SBA guaranteed commercial loans, except:

    b. If the loan is not fully secured, life insurance is required for the principals of sole

proprietorships, single member LLCs, or for businesses otherwise dependent on one owner's active participation, consistent with the size and term of the loan. The amount and type of collateral available to repay the loan may be factored into the determination of the appropriate amount of life insurance. If Lender determines that the principal is uninsurable, Lender must obtain written documentation from a licensed insurer of the same.

   c. For 7(a) Small Loans, SBA Express and Export Express loans, Lenders may follow their internal written policy for their similarly-sized, non-SBA guaranteed commercial loans.

## III. ASSIGNMENT OF LEASE AND LANDLORD'S WAIVER

A. When a substantial portion of the loan proceeds are to be used for leasehold improvements or a substantial portion of the collateral consists of leasehold improvements, fixtures, machinery, or equipment that is attached to leased real estate, the Lender should obtain an Assignment of Lease with:

   1. A term including renewal options that equals or exceeds the term of the loan; and

   2. A requirement that the lessor provide a 60-day written notice of default to the Lender with option to cure the default; and

   3. A Landlord's Waiver. The Landlord's Waiver gives the Lender access to the leased premises and facilitates the liquidation of the collateral on the Borrower's premises and should be obtained for all SBA loans with tangible personal property as collateral.

B. If the loan proceeds will finance existing or new improvements on a leasehold interest in land, the underlying ground lease must include, at a minimum, detailed clauses addressing the following:

   1. Tenant's right to encumber leasehold estate;

   2. No modification or cancellation of lease without Lender's or assignee's approval;

   3. Lender's or assignee's right to:

      a. Acquire the leasehold at foreclosure sale or by assignment and right to reassign the leasehold estate (along with right to exercise any options) by Lender or successors; lessor may not unreasonably withhold, condition or delay the reassignment;

      b. Sublease;

      c. Share in hazard insurance proceeds resulting from damage to improvements;

      d. Share in condemnation proceeds; and

      e. Lender's or assignee's rights upon default of the tenant or termination.

C. For lease requirements concerning EPCs and OCs, see Chapter 2, Paragraph III.D of this Subpart.

D. For loans collateralized by Indian lands held in trust, if the owner of the land cannot get approval for a lien on the property, you may consider requiring an Assignment of Lease. The